[File No. 6361.]

STEPHEN LAUINGER, Respondent, v. NATIONAL FIRE IN-
SURANCE COMPANY OF HARTFORD, Conn., Appellant.

(262 N. W. 180.)

Opinion filed July 29, 1935.

*Scott Cameron,* for appellant.

*Alvin C. Strutz,* for respondent.

CHRISTIANSON, J. Plaintiff brought this action to recover upon a fire insurance policy. The case was tried to the court without a jury and resulted in a judgment in favor of the plaintiff. The defendant moved for a new trial. The motion was denied and defendant appeals from the judgment and from the order denying its motion for a new trial.

The complaint alleges that on January 10, 1927, the defendant issued to the plaintiff an insurance policy of the usual standard form adopted in this state whereby it insured the plaintiff against loss or damage by fire in the sum of $800 upon a certain dwelling house situated on the NW¼, sec. 20, Twp. 133, R. 73, in Logan county in this state. On April 14, 1931, the dwelling house so insured was destroyed by fire.

The defendant in its answer admits the issuance of the policy, the destruction of the building by fire, also that it has not paid the loss. In the answer it is alleged that the policy of insurance contained the following provisions:

"This entire policy shall be void if the insured has concealed or mis-

represented, in writing or otherwise, any material fact or circumstance concerning this insurance of the subject thereof; if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof whether before or after a loss."

"That this entire policy, unless otherwise provided by agreement endorsed hereon or added hereto shall be void—if the interest of the insured be other than unconditional and sole ownership, or if the subject of the insurance be a building on ground not owned by the insured in fee simple." And it is further alleged:

"That the said Plaintiff represented at the time of obtaining said insurance that he was the sole owner of said property, when in truth and in fact he was not such sole owner, and that said property at the time of the issuance of said insurance policy, and thereafter until the time of the loss, was occupied by one Anton A. Fettig under a contract of purchase."

"That at the time of the issuance of said policy and at the time of the alleged loss the Plaintiff was not the unconditional and sole owner of said property and that said property was then subject to a contract of purchase with one Anton A. Fettig, which fact was well known to the Plaintiff and unknown to this Defendant."

The controlling question on this appeal arose under these allegations of the answer. In fact, the sole question presented for determination on this appeal is whether the plaintiff, at the time he applied for the insurance, falsely represented that he was the sole and unconditional owner in fee of the dwelling house in question.

The evidence in this case discloses that the plaintiff Lauinger, on January 2, 1919, was the owner of a 240 acre tract of land in Logan county. On that day he entered into a contract with his son-in-law, Anton Fettig, whereby he sold his land to Fettig on the so-called crop payment plan. Fettig went into possession and placed a dwelling house on the premises, which he and his family thereafter occupied. Under the terms of the contract Fettig was to pay the plaintiff $6,720 for the land, with interest at the rate of $7\frac{1}{2}$ per cent per annum. Fettig also was to pay all taxes assessed against the land. Payment was to be made by delivery to the plaintiff of all crops raised on the land. Endorsements on the contract show that certain payments were made

until the fall of 1925. These payments were in many instances only partial payments of the interest and apparently no part of the principal was paid. According to the evidence there was an outstanding mortgage on the premises held by a resident of California. Default had been made in such mortgage and in the fall of 1926 the owner threatened foreclosure. Fettig and his wife, on October 1, 1926, executed a written release of the contract and delivered the same, together with the contract, to the plaintiff. The plaintiff thereafter obtained a loan on the premises from the Bank of North Dakota and executed a mortgage on the land to secure such loan. The Bank required that the dwelling house on the premises be insured against loss by fire and that there be attached to the policy a provision making the policy, in case of loss, payable to the Bank as mortgagee, as its interest might appear. Fettig continued to occupy the land after he and his wife had released and surrendered the contract of purchase, and he and his family were occupying the dwelling house at the time of the fire, and they were still occupying the premises at the time of the trial of this action.

It also appears that in 1928 Fettig built an addition to the dwelling house at a cost of about $450.

In July 1929, Fettig made application to the Northwestern German Farmers Insurance Company of Eureka, South Dakota, for fire insurance upon certain property. The policy covered, among other property, certain household goods and the dwelling house in question here,—such dwelling house being insured in favor of Fettig in the sum of $800.

The evidence also discloses that after the destruction of the dwelling house by fire, Fettig submitted proof of loss under the policy of the Northwestern German Farmers Insurance Company and that that Company paid the loss, and that such payment included the sum of $800 for the loss of the dwelling house involved in this suit.

The plaintiff, his son-in-law, Fettig, and his daughter, Mrs. Fettig, as well as the son who has been looking after plaintiff's business affairs, were all sworn and testified as witnesses upon the trial.

The plaintiff speaks English with difficulty and upon the trial he testified through an interpreter. In all his business transactions, including the release of the contract by Fettig, the making of the loan from the Bank of North Dakota, and the obtaining of insurance on the

dwelling house from the defendant, he was represented by a son with whom he resides.

According to the testimony of the plaintiff, his son, daughter and son-in-law, Fettig for some time had ben unable to make any substantial payments upon his contract, and, in order to save his property, it became necessary for the plaintiff to repossess the land in the fall of 1926. According to the testimony of all these witnesses Fettig and his wife released and surrendered the contract in October, 1926, without any reservations whatsoever.

The undisputed evidence is to the effect that at that time an arrangement was made whereby plaintiff rented the premises to Fettig, and Fettig agreed to pay $150 a year rent and in addition thereto the taxes against the premises. The evidence discloses that the amount of the payments which plaintiff must make upon his mortgage to the Bank of North Dakota is $150 per year. It was admitted by the parties that there was some hope that Fettig at some future time might be in position to purchase the premises; but the unequivocal testimony of all the witnesses was to the effect that there was no arrangement or agreement either contingent or otherwise for the purchase of the premises by Fettig. In other words, according to the testimony of the plaintiff and his witnesses, the plaintiff was the sole owner of the land and Fettig had no interest, right or title thereto and occupied the same merely as a tenant.

It is the contention of the defendant that the undisputed facts in the case are so contrary to this testimony that the testimony must be disbelieved. In short, it is the contention of the defendant that the evidence in the case considered as a whole can lead to but one conclusion, namely, that the contract of purchase between Fettig and the plaintiff actually remained in force, and that notwithstanding the release and surrender of the contract Fettig continued to have an interest in the land, and in effect be the equitable owner thereof under a contract to purchase. This contention cannot be sustained. In this case the witnesses appeared in person and testified. The trial judge had an opportunity to hear their testimony and to observe their demeanor. He concluded that these witnesses told the truth and that the plaintiff was in fact the sole owner of the land and that Fettig had no interest or estate therein and that his occupancy was merely that of a tenant; also

that the plaintiff and the son who acted as his agent had no knowledge of the insurance policy that was procured by Fettig.

These findings of the trial court are obviously entitled to appreciable weight, and we are all agreed that upon the record presented on this appeal these findings are in accord with the preponderance of the evidence.

The testimony of the several witnesses, as contained in the record, seems candid and straight forward. The arrangement that was made in the fall of 1926 was a natural one. The purchaser had been unable to make any substantial payments. The indebtedness, instead of decreasing, had increased during the years. The land was subject to a mortgage. The vendor, in order to save his property, found it necessary to repossess the property and refinance the mortgage indebtedness. The time was one when it was difficult for either creditors or debtors to assume definite obligations. Instead of making a new agreement for the purchase and sale of the property the parties contented themselves with a leasing arrangement.

The plaintiff, having resumed ownership of the farm, was naturally interested in procuring a tenant. Fettig must have some place where he and his family could live, so the resulting rental agreement seems perfectly natural. Nor is there anything in the terms of the agreement to indicate that the agreement is not in fact what the parties claim. The rent was fixed at the amount of the taxes plus $150 a year. In other words, the rent was fixed at the minimum amounts which the plaintiff must expend each year in carrying the property. It is true Fettig constructed an addition to the house,—an addition which the evidence discloses was necessary for the convenience of his family. It is not unusual for tenants to construct improvements upon premises without any arrangements with the landlord. This is especially so in cases where the relations between the landlord and the tenant are amicable and where the tenant has faith in the fairness of his landlord. In this case Fettig probably had every faith that his father-in-law would treat him fairly, and that eventually some satisfactory arrangement would be made as regards the improvement that he had constructed. It is also true that Fettig insured the house and that the insurance company that carried the insurance paid the loss. But the plaintiff, Fettig, and his wife, were all people rather unversed in the methods of business. As said,

they spoke English with difficulty. They apparently did not know that at the time they obtained the policy they made any representations to the effect that they were the owners of the house. *After all it was their home.* It was the place where they had all their earthly belongings, and when insuring their property they felt they had an insurable interest at stake in the house which they also wanted to protect.

We are not concerned here with the validity of the insurance obtained by Fettig. The testimony of both the plaintiff and his son is to the effect that they knew nothing about Fettig having insured the house. There is no claim that the fire was incendiary and the evidence fairly discloses that there was an actual loss which exceeded the amount of both policies.

We find no reason for interfering with the findings or disturbing the judgment entered by the court below. The judgment and order appealed from are affirmed.

BURKE, Ch. J., BURR, MORRIS and NUESSLE, JJ., concur.